Lisa KARL, by her parents and natural guardians, Harold and Virginia KARL, Plaintiff-Appellee,

v.

The BOARD OF EDUCATION OF the GENESEO CENTRAL SCHOOL DISTRICT and Gordon Ambach, Commissioner of the New York State Education Department, and the Livingston-Steuben-Wyoming Counties Board of Cooperative Educational Services, and Charles Holowach, as District Superintendent, Defendants-Appellants.

Nos. 552, 554 and 559, Dockets 83–7683, 83–7705, 83–7817, 83–7875 and 83–7877.

United States Court of Appeals, Second Circuit.

Argued Dec. 2, 1983.

Decided June 18, 1984.

James A. Spitz, Jr., Rochester, N.Y. (Mary Anne Kolb, Mary J. Harrington, Harris, Beach, Wilcox, Rubin & Levey, Rochester, N.Y., of counsel), for defendant-appellant Bd. of Educ. of the Geneseo Central School District.

Kenneth Pawson, Albany, N.Y. (Robert D. Stone, Albany, N.Y., of counsel), for defendant-appellant Gordon Ambach, Com'r of the N.Y. State Educ. Dept.

Brendan C. O'Shea, Albany, N.Y. (Peter L. Danziger, O'Connell & Aronowitz, P.C., Albany, N.Y., of counsel), for defendant-appellant Livingston-Steuben-Wyoming Counties Bd. of Cooperative Educational Services.

James R. Sheldon, Jr., Buffalo, N.Y. (Western New York Protection and Advocacy Office for the Developmentally Disabled Neighborhood Legal Services, Inc.; Elizabeth L. Schneider, Statewide Youth Advocacy, Inc., Rochester, N.Y., of counsel), for plaintiff-appellee Lisa Karl.

Before WINTER and PRATT, Circuit Judges, and METZNER, District Judge.*

WINTER, Circuit Judge.

This is an appeal from Judge Telesca's order entered under the Education of the Handicapped Act ("Act"), 20 U.S.C. §§ 1400 et seq., directing the defendants to maintain a student-adult ratio of nine-to-one in plaintiff's vocational education class. We reverse.

## BACKGROUND

The plaintiff, Lisa Karl, is a handicapped 21 year old woman who is classified as educable mentally retarded. In the fall of 1978, Ms. Karl transferred to the Geneseo Central School District ("Geneseo") from a private religious school. The Committee on the Handicapped ("COH") of the Geneseo Board of Education ("Board") assigned Ms. Karl to a basic resource room academic

---

* Hon. Charles M. Metzner of the United States District Court for the Southern District of New York, sitting by designation.

program for similarly handicapped students, provided her with additional remedial reading instruction, and entered her in classes in home economics and physical education. In the fall of 1979, the COH recommended that Ms. Karl be enrolled in a vocational, commercial housekeeping course offered by the Livingston-Steuben-Wyoming Counties Board of Cooperative Educational Services ("BOCES"). After objections from Ms. Karl's parents concerning certain scheduling conflicts, the Board decided instead to provide Ms. Karl with an individualized tutorial program. To that end, the Board hired Jean Dutchess, a home economics teacher, to tutor Ms. Karl on a one-to-one basis in housekeeping skills, kitchen skills, commercial cleaning techniques and work organization techniques. Ms. Karl's individualized education program ("IEP") for the 1979–80 school year thus consisted of morning sessions in the resource room, remedial reading instruction, physical education classes and afternoon tutorials.

The COH recommended that during the 1980–81 school year Ms. Karl spend her afternoons at the BOCES special education commercial housekeeping course for similarly handicapped pupils. Ms. Karl's parents objected, and to accommodate them, the Board once again hired Ms. Dutchess to provide a personalized tutorial course in basic life skills. This academic schedule continued during afternoons for the next two years.

In March, 1982, the COH considered several options for Ms. Karl's IEP during the 1982–83 school year. One of these was to combine Ms. Karl's continued morning program in the resource room with afternoon vocational training in commercial food preparation in a mainstream BOCES classroom. The use of mainstreaming, the practice of educating handicapped children in regular classes attended by nonhandicapped students, is favored by the Act. 20 U.S.C. § 1412(5).

Ms. Karl's parents favored the mainstreaming option but only so long as the student-adult ratio in the food preparation

course did not exceed six-to-one. The course as offered had a twelve-to-one ratio. Pursuant to advice from Ms. Dutchess, the COH rejected the food service training and recommended instead that Ms. Karl enter a work-study program administered by the BOCES. After the Board approved that option, Ms. Karl's parents requested that her IEP be reviewed in an impartial due process hearing, which under the Act, New York is required to hold. 20 U.S.C. § 1415(b)(2). *See also* N.Y.Educ.Law § 4404 (McKinney 1981).

On September 16 and 23, 1982, Hearing Officer William Nowlin heard testimony concerning Ms. Karl from her parents, her instructors, a school psychologist and the coordinator of the BOCES work-study program. Nowlin was informed that Ms. Karl had a second grade reading comprehension level and could follow directions only if they were constantly repeated. On October 6, 1982, Nowlin determined that Ms. Karl should be placed in the commercial food preparation program rather than the work-study program. However, he directed that one additional teacher's aide be hired for the food preparation course so that the student-adult ratio would not exceed nine-to-one.

The Board appealed Nowlin's decision to the New York State Commissioner of Education, Gordon Ambach, who upheld Ms. Karl's placement in the commercial food preparation program but reversed Nowlin's decision requiring a nine-to-one student-adult ratio. On January 31, 1983, the Board implemented Ambach's decision and enrolled Ms. Karl in the BOCES food service class with its twelve-to-one student-adult ratio.

On April 7, 1983, Ms. Karl's parents filed the instant complaint on Ms. Karl's behalf alleging violations of the Act and seeking declaratory and injunctive relief.

Noting that he "share[d] the concern of the Karls and the Hearing Officer that it may be unrealistic to expect one teacher and one aide to adequately handle such a wide variety of students," Judge Telesca held that "the appropriate educational pro-

gram for Lisa Karl is one that maintains a student-adult ratio of no more than 9:1." In addition, he indicated that his obligation to defer to the judgment of state educational authorities was greatly diminished or eliminated by the failure of Commissioner Ambach and Hearing Officer Nowlin to agree on a program. Finally, Judge Telesca rejected the Board's argument that the purpose of mainstreaming would be defeated if the Act were held to apply to such programs and to authorize judicial alteration of the composition of mainstream classes.

The Board appeals from that decision. In view of our disposition of this appeal, we need not describe the numerous other issues disputed by the parties.

## DISCUSSION

The Act provides that no state may qualify for federal financial assistance unless it can demonstrate that it "has in effect a policy that assures all handicapped children the right to a free appropriate public education." 20 U.S.C. § 1412(1). Such an education must be tailored to the unique needs of the particular handicapped child by means of an IEP prepared by local education officials in conjunction with the child's parents. 20 U.S.C. §§ 1401(18), (19). The term "free appropriate public education" is defined to mean educational instruction designed pursuant to an IEP and supported by such services as are necessary to permit the child to benefit from the instruction.[1] The Act permits aggrieved parties to seek federal judicial review of all matters "relating to ... the provision of a free appropriate

public education to [a handicapped] child." 20 U.S.C. § 1415(e)(2)

■ In *Board of Education v. Rowley*, 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982), the Supreme Court established a two-step process to be followed under the Act by a court reviewing state decisions as to individual IEP's. Such a court must first determine whether the state has complied with the procedural requirements of the Act. *Id.* at 206, 102 S.Ct. at 3050. If that decision is positive, the court then moves to the second step and conducts a deferential substantive review of the particular IEP to determine whether it is "reasonably calculated to enable the child to receive educational benefits." *Id.* at 207, 102 S.Ct. at 3051.

*Rowley* states that the sole purpose of this substantive review is to ensure that handicapped children are not being denied access to their state's educational system, 458 U.S. at 191–203, 102 S.Ct. at 3042–49. We are explicitly cautioned not to impose a particular substantive educational standard on the state or to require equality of opportunity for the handicapped in education. *Id.* at 198–200, 102 S.Ct. at 3046–47. In addressing the relationship between the EHA's definition of a "free appropriate public education" and federal judicial review, *Rowley* warns that "courts must be careful to avoid imposing their view of preferable educational methods upon the States," *id.* at 207, 102 S.Ct. at 3051, and that "the provision that a reviewing court base its decision on the 'preponderance of the evidence' is by no means an invitation to the courts to substitute their own no-

1. The Act defines a "free appropriate public education" as follows:

The term "free appropriate public education" means *special education* and *related services* which (A) have been provided at public expense, under public supervision and direction, and without charge, (B) meet the standards of the State educational agency, (C) include an appropriate preschool, elementary, or secondary school education in the State involved, and (D) are provided in conformity with the individualized education program required under section 1414(a)(5) of this title.

20 U.S.C. § 1401(18) (emphasis added).

The term "special education" referred to in this definition means: "specially designed instruction, at no cost to parents or guardians, to meet the unique needs of a handicapped child, including classroom instruction, instruction in physical education, home instruction, and instruction in hospitals and institutions." *Id.* § 1401(16). "Related services" are defined in pertinent part as "transportation, and such developmental, corrective, and other supportive services ... as may be required to assist a handicapped child to benefit from special education." *Id.* § 1401(17).

tions of sound educational policy for those of the school authorities which they review." *Id.* at 206, 102 S.Ct. at 3051.

Because we believe that Judge Telesca failed to observe the teachings of *Rowley,* we reverse.[2] First, he did not make the required finding that Ms. Karl's IEP was not "reasonably calculated to enable [her] to receive educational benefits." 458 U.S. at 207, 102 S.Ct. at 3051. Instead, he found that the student-adult ratio adopted by Commissioner Ambach for the food preparation class "may be unrealistic" and "that the appropriate educational program ... is ... a student-adult ratio of no more than 9:1." Although his findings are in the language of the statute, Judge Telesca avowedly substituted his view that a nine-to-one ratio was preferable to the twelve-to-one ratio selected by the commissioner and made no finding that the twelve-to-one ratio was an unreasoned calculation so far as educational benefit to Ms. Karl was concerned. His decision was not, therefore, consistent with the gloss *Rowley* put on the Act.

Second, we disagree with Judge Telesca's view that the federal courts need not defer to state educational authorities whenever there is some disagreement among state officers in the course of the state proceedings. We believe *Rowley* requires that federal courts defer to the final decision of the state authorities, and that deference may not be eschewed merely because a decision is not unanimous or the reviewing authority disagrees with the hearing officer. There is no principle of administrative law which, in the event of a disagreement between a hearing officer and reviewing agency over demeanor evidence, obviates the need for deference to an agency's final decision where such deference is otherwise appropriate.

Third, Judge Telesca focused solely upon the food preparation class, and we believe that federal judicial review under

the Act must evaluate the IEP of the particular student as a whole rather than scrutinize the individual components in isolation. We by no means suggest that an individual component may not be both so important and so deficient that a *Rowley* finding as to the absence of overall educational benefit could not be made. Nevertheless, the educational benefits flowing from an IEP must be determined from the combination of offerings rather than the single components viewed apart from the whole. For example, in the instant case the district court offered no comment on the argument that the benefits of mainstreaming might be lost by the intrusion of a third adult supervisor. This oversight, which is not without significance in view of the Act's policy favoring mainstreaming, was the natural consequence of viewing the food preparation class in isolation from the remainder of Ms. Karl's IEP, which emphasized individual instruction.

We have reviewed the record to determine whether the findings required by *Rowley* might nevertheless have been made and whether we should remand rather than reverse and order entry of judgment for defendants. Viewing the evidence in the light most favorable to the plaintiffs, we conclude it is insufficient to support a finding that Ms. Karl's IEP was not "reasonably calculated to enable [her] to receive educational benefits," 458 U.S. at 207, 102 S.Ct. at 3051, or that she has been denied access to the state's educational system. *Id.* at 200–203, 102 S.Ct. at 3047–49.

Ms. Karl continues to receive, as she has for six years, individualized one-on-one instruction. She is currently tutored every morning in the resource room by a special education teacher for three 42-minute periods. For two of those periods, she is the only pupil and receives a full period of intensive one-on-one instruction which is coordinated with her food service curriculum. In addition, Ms. Karl receives individualized attention in her remedial reading

---

**2.** Since no claim of procedural irregularity has been raised, only the second step of the *Rowley* analysis is applicable.

class and in her mainstream physical education class.

None of the evidence before Judge Telesca indicated that Ms. Karl was not receiving educational benefit from the IEP outlined above in combination with a mainstream food preparation class which had a twelve-to-one student-adult ratio. Indeed, no one even testified that Ms. Karl would not receive educational benefit from the food service class viewed in isolation. The testimony was only that Ms. Karl would benefit more from the food service class with a nine-to-one student adult ratio than from a class with a twelve-to-one ratio. However, evidence that Ms. Karl might have received somewhat more educational benefit from a different ratio is insufficient under *Rowley* since it does not prove that the state authorities failed to make a reasoned calculation in fashioning Ms. Karl's IEP. Indeed, it was precisely such a finding of fact which was reversed in that case. *Id.* at 185, 102 S.Ct. at 3039.

Because of our disposition of this appeal, we need not consider other issues raised by the parties, including whether judicial review of mainstream classes is precluded as a matter of law under the Act.

The judgment of the district court is reversed and judgment will be entered for defendants.

PRATT, Circuit Judge, dissenting.

I dissent. The majority today has turned its back on congress's direction that a district court should actively review the individualized education program (IEP) of an aggrieved handicapped child, and it has precluded any realistic judicial review of state administrative decisions under the Education of the Handicapped Act (EHA), 20 U.S.C. § 1401 *et seq.* It is true that the EHA created a potential for thrusting many additional difficult cases on already overworked district judges, but I fear that the solution chosen by the majority—to leave selection of the proper IEP to the last state administrator to review the file—will deprive handicapped children and their parents of much of the protection they thought they had obtained through enactment of the EHA.

In the statute, congress spelled out elaborate, detailed administrative procedures for developing an IEP for each handicapped child, and it provided judicial review to resolve any differences remaining after the administrative process is concluded. Congress's intense concern for the welfare of each handicapped child was demonstrated by the type of judicial review it commanded. It rejected the conventional form wherein an administrator's decision must be sustained if supported by substantial evidence. *Board of Education v. Rowley,* 458 U.S. 176, 205–06, 102 S.Ct. 3034, 3035, 3050, 73 L.Ed.2d 690 (1982). Instead, congress commanded the courts to conduct *de novo* hearings which would consider both the administrative record and any additional evidence offered by a party, and to reach decisions based on a preponderance of the evidence. 20 U.S.C. § 1415(e)(2).

In *Rowley,* the Supreme Court offered guidance to courts reviewing IEPs. It prescribed a two-step analysis, one step to focus on procedure, the other on substance. On the substantive side, which is relevant here, the courts were instructed to give "due weight" to the state administrative proceedings and determine whether the IEP under consideration was "reasonably calculated to enable the child to receive educational benefits." 458 U.S. at 207, 102 S.Ct. at 3051.

The majority characterizes this process as "deferential substantive review." However characterized, "deference" or "due weight" to the administrative proceedings does not mean simple subservience to the last administrator to speak, particularly when, as here, the combined expertise within the administrative system produced three different IEPs. *Rowley's* "gloss" on a clearly written statute requires only that the district judge give "due weight" to the views of the administrators; when those views conflict, it does not require him to accept the conclusion of the state's commissioner of education, nor does it relieve him of the burden of making the *de novo* deter-

mination required by congress. In ratifying the commissioner's decision, the majority has, in effect, adopted the substantial evidence standard of review that congress carefully rejected. Indeed, by semantically shifting *Rowley's* substantively oriented "reasonably calculated" standard to a procedural inquiry of whether the determination was a "reasoned calculation", the majority has effectively eliminated the substantive step of the *Rowley* analysis.

Judge Telesca did not, as did the district judge in *Rowley,* substitute his judgment on an educational matter for that of professional administrators. On the contrary, as required by *Rowley,* he gave "due weight" to the administrative proceedings; he properly faced up to the hopeless conflict among the administrators over Lisa's needs and carried out his statutory responsibility by making a *de novo* determination of her appropriate IEP.

Presented with considerable evidence of Lisa Karl's special need for close supervision, Judge Telesca examined Lisa's background, and agreeing with the impartial hearing officer, found that "the appropriate educational program for Lisa Karl is one that maintains a student-adult ratio of no more than 9:1", because she "needs close adult supervision in order to achieve *any* degree of success in an educational setting." (Emphasis added). While these findings did not mechanically echo the precise language of *Rowley,* surely an educational program that for one-half of each school day does not produce any educational benefit for the child is not "reasonably calculated to enable the child to receive educational benefits", 458 U.S. at 207, 102 S.Ct. at 3051. Given the extensive testimony as to Lisa's particular need for closely supervised training, Judge Telesca's finding that Lisa's appropriate IEP should include the BOCES food service program with a 9:1 student/adult ratio was not clearly erroneous.

The judgment appealed from should be affirmed.

* Judge Gibbons would not delete the provision with respect to costs.