**COUNCIL FOR THE HEARING IMPAIRED LONG ISLAND, INC., et al., Plaintiffs,**

v.

**Gordon AMBACH, individually and as Commissioner of Education of the State of New York, et al., Defendants.**

No. 79 Civ. 1020.

United States District Court, E.D. New York.

June 13, 1985.

John H. Mulvehill, Cold Spring Harbor, N.Y., for plaintiffs.

Susan M. Rogers, Asst. U.S. Atty., E.D. New York, Kenneth Pawson, Robert P. Stone, Albany, N.Y., for defendants.

GLASSER, District Judge:

Plaintiffs, the State defendants and the Federal defendants, have all moved or cross-moved for summary judgment on plaintiffs' claims concerning alleged salary

differentials between teachers in the so-called "4201" schools and teachers in regular public schools in New York.[1] For the reasons that follow, the State defendants' and the Federal defendants' motions for summary judgment dismissing plaintiffs' Education of the Handicapped Act ("EHA") claims are granted. The State defendants' motion for summary judgment dismissing plaintiffs' First and Ninth Amendment claims is granted, as is the State defendants' motion to dismiss plaintiffs' Fourteenth Amendment equal protection claims insofar as those claims challenge a denial of plaintiffs' right to an appropriate free public education. The Federal defendants' motions for summary judgment are granted with respect to all constitutional claims and any claims raised under 42 U.S.C. § 1983. With respect to plaintiffs' claims under § 504 of the Rehabilitation Act, 29 U.S.C. § 794, against both the State and Federal defendants and the related Fourteenth Amendment claims against the State defendants, I find that questions of material fact preclude the grant of summary judgment.

*Background*

This case has been the subject of an extraordinary amount of motion practice during its six year history. It is assumed that the reader is familiar with the underlying facts of this case, which are set forth in an earlier Memorandum and Order of this Court, dated November 21, 1983. To put the present motions into their proper context, I will briefly summarize the recent procedural history of this case.

In the Memorandum and Order of November 21, 1983, I denied motions brought under Fed.R.Civ.P. 12(b)(6) which raised issues that are essentially identical to many of the issues raised by the present motions. I also granted both the State and Federal defendants' motions to dismiss plaintiffs' termination of appointment claims, and granted plaintiffs' motion for class certification.

Shortly thereafter, plaintiffs moved for leave to amend the complaint to assert an additional claim challenging the State defendants' procedures for designating handicapped children to 4201 schools. At that time, plaintiffs also sought summary judgment on the teachers' salary issue. Leave to amend was granted. The State defendants then cross-moved for summary judgment, asserting essentially the same arguments as were presented on the prior 12(b)(6) motion, without any further development of the underlying facts. At a status conference in May 1984, it was agreed that the parties would prepare and submit a stipulation of the facts necessary to resolve the teachers' salary issue, and that the summary judgment motions would be held in abeyance pending submission of the stipulation. By agreement of the parties, the stipulation and pending summary judgment motions would address only the teachers' salary claims.

The stipulation of facts was submitted in December 1984. The stipulation speaks for itself in its brevity and vagueness.[2] Plain-

---

**1.** The "4201" schools are institutions for the instruction of the deaf and the blind that are listed in section 4201 of the New York Education Law. The parties have stipulated that the schools listed in section 4201 are all private institutions, except for the New York State School for the Blind and the "New York State School for the Deaf," both of which are state-operated schools. The stipulation may create some confusion in that section 4201 lists a school called "The New York school for the deaf," but does not list a school called the "New York State School for the Deaf." This inconsistency is of no moment at the present time. To avoid potential problems in the future, the parties are directed to submit a supplementary stipulation indicating whether the "New York State

School for the Deaf" referred to in their stipulation is indeed the "New York School for the deaf" listed in Section 4201.

**2.** The stipulation provides:

*Issue*

Is there a violation of constitutional or statutory mandates where salary differentials exist between 4201 teachers and teachers in surrounding school districts?

*Facts*

1. The schools enumerated in Education Law Section 4201, except for the New York State School for the Blind and the New York State School for the Deaf, both of which are state-operated schools, are private institutions

tiffs and the State defendants subsequently renewed their summary judgment motions on the teachers' salary claim, and the Federal defendants moved for summary judgment asserting lack of standing, failure to state a claim, and lack of subject matter jurisdiction.

It is noteworthy that no significant discovery has taken place in this six year old case. None of the parties submitted affidavits or other appropriate material in support of their motions for summary judgment.[3] Thus, the stipulation is the only source of facts outside the pleadings which was made available for my consideration in deciding the pending motions for summary judgment.

*Discussion*

### 1. *The EHA Claims*

The EHA, 20 U.S.C. § 1401, et seq., establishes a comprehensive program for providing Federal funds to assist the States in educating handicapped children. The eligibility requirements for Federal assistance under the EHA provide, *inter alia*, that the recipient state have a "policy that assures all handicapped children the right to a free appropriate public education." 20 U.S.C. § 1412(1). The Act also requires

"for the instruction of the deaf and of the blind."
2. Pupils in such institutions attend without cost to them, and the institutions receiving funding, from New York State tax levy money, for their attendance [sic].
3. Other programs, both private and public, exist for children who are deaf, hard of hearing or visually impaired, as defined in 8 NYCRR 200.1(cc).
4. In calculating the amount of aid to pay such institutions "(t)he portion of the salary of each employee which exceeds the salary of an employee having similar duties at the State-operated schools for the deaf and blind shall not be an aidable operating expense" (8 NYCRR 200.10(d)[ ] ].
5. These State-supported schools are free to pay their employees a higher salary but would have to use any private funds which they may have, i.e., donations from benefactors to pay any such higher salaries.
6. There are different salary schedules prevailing for teachers working for the State-supported schools, surrounding school districts, boards of cooperative educational services,

that the recipient state establish certain procedural safeguards to protect the rights of handicapped children. 20 U.S.C. § 1415.

The crux of plaintiffs' claims is that, pursuant to certain regulations promulgated by the Commissioner of Education of the State of New York, teachers of privately operated 4201 schools in New York are paid lower salaries than teachers in public schools for the non-handicapped, and that this in turn causes higher rates of staff turnover in 4201 schools than in regular public schools. Amended Complaint ¶¶ 29, 30. The primary regulation in question, popularly known as the Rome Standard, provides as follows:

*Aidable operating expenses* means the necessary expenditures for approved educational programs provided to State-appointed pupils, and shall be determined in accordance with the following provisions:

\*      \*      \*      \*      \*      \*

(d) Review of all budgets submitted by the State-supported schools will be guided by the expenditures at the State-operated schools for the deaf and blind. The portion of the salary of each employee which exceeds the salary of an employee having similar duties at State-operated schools for the deaf and blind shall not

other State agencies which operate educational programs, and pri-ate [sic] schools other than the State-supported schools.
7. Teachers in the State-supported schools are required to meet the same teacher certification requirements as public school teachers are required to meet. Teachers in those schools are certified to New York State standards.
8. Seven (7) of the eight (8) State-supported schools for the deaf use the total communication approach, which depends upon gesture, body language, voice amplification and very largely sign language as a primary means of education in the classroom.
9. In order to obtain New York State certification to teach deaf children, a person need not have received training nor demonstrate proficiency in sign language.

**3.** Plaintiffs did submit the affidavit of their attorney, John Mulvehill. That affidavit merely summarized some of plaintiffs' legal arguments, but did not contain any statements of fact that would aid the Court in resolving a motion for summary judgment. *See* Fed.R.Civ.P. 56(e).

be an aidable operating expense of such State-supported private schools, except that a location paid differential, in the amount provided for in any contract or contracts between the State of New York and the certified or recognized employee organization or organizations representing State employees at the State-operated schools for the deaf and blind will be included as an aidable operating expense of schools located in the geographical areas to which such location pay differential applies.

8 N.Y.C.R.R. § 200.10 (formerly 8 N.Y.C.R.R. § 200.6(b)(4)). Plaintiffs' claims concerning this regulation are essentially summed up in two paragraphs of the Amended Complaint. Paragraph 31 alleges that high rates of turnover among teachers at 4201 schools "disrupt the educational continuity and impair the accomplishment of the objectives of the educational programs of the class." Paragraph 32 alleges that the educational programs offered to plaintiffs in 4201 schools "fail to meet their educational needs as adequately as the needs of non-handicapped persons are met and are therefore not appropriate." [4]

■ To the extent that plaintiffs are claiming only that the allegedly lower salaries paid to teachers in 4201 schools result in a lower quality education for 4201 students, plaintiffs do not state a claim under the EHA. In the leading case of *Board of Education of the Hendrick Hudson School District v. Rowley*, 458 U.S. 176, 198, 102 S.Ct. 3034, 3046, 73 L.Ed.2d 690 (1982), the Court held that the EHA does not require that handicapped students be furnished with opportunities or services equal to those provided for non-handicapped students. In *Rowley*, a deaf student challenged her school's refusal to provide a sign language interpreter. The district court had found that without the interpreter, the handicapped student performed "above average" for her class, but not as well as she would have performed without her handicap. *Id.* at 185, 102 S.Ct. at 3040. After a lengthy analysis of the legislative history behind the EHA, the Supreme Court noted that the primary purpose of the EHA was to assure that all handicapped children have access to education. The Court concluded that the statutory requirement of a "free appropriate public education" for the handicapped requires that the State provide a "basic floor of opportunity" consisting of specialized instruction and services which are designed to provide "educational benefit to the child." *Id.* at 201, 102 S.Ct. at 3048. The Court held that this requirement is satisfied if the State provides personalized instruction with support services that permit the child to "benefit educationally" from the instruction. *Id.* at 203, 102 S.Ct. at 3049.

Consistent with *Rowley*, the Second Circuit has recently noted that the term "free appropriate public education" in the EHA is "defined to mean educational instruction designed pursuant to an IEP [Individualized Education Program] and supported by such services as are necessary to permit the child to benefit from the instruction." *Karl v. Board of Education of Geneseo Central School District*, 736 F.2d 873, 876 (2d Cir.1984). The Second Circuit specifically warned that the sole purpose of feder-

---

**4.** In their Reply Memorandum of Law, plaintiffs seem to raise the additional claim that the State defendants have not met the statutory requirement that, when handicapped children are placed in private schools, those schools must meet the State's educational standards. 20 U.S.C. § 1413(a)(4). Paragraph 7 of the stipulation recites that all 4201 teachers meet the same certification requirements as public school teachers. Paragraph 8 of the stipulation indicates that sign language is a primary means of education in seven of the eight State-supported schools for the deaf, and paragraph 9 states that a person need not have received training nor demonstrate proficiency in sign language in or-

der to obtain New York State certification to teach deaf children. From these facts, plaintiffs make the convoluted argument that 4201 teachers should be paid more than teachers of non-handicapped students, but since they are paid less than other teachers, teachers in 4201 schools are not competent and therefore do not meet the standards that apply to local educational agencies as required by § 1413(a)(4). This "competency" claim is not raised in the Amended Complaint. A new claim cannot be properly interposed in a Reply Memorandum. Accordingly, I see no reason to address the teacher competency claim on its merits.

al court review under the EHA "is to ensure that handicapped children are not being denied access to their State's educational system.... We are explicitly cautioned *not* to impose a particular substantive educational standard on a State or *to require equality of opportunity* for handicapped children in education." *Id., citing Rowley,* 458 U.S. at 191–203, 102 S.Ct. at 3043–3049 (emphasis added).

When viewed under the standards set forth in *Rowley* and *Karl,* the lack of equality alleged in Paragraph 32 of the Amended Complaint, purportedly supported by the stipulation, plainly fails to state a claim under the EHA. Plaintiffs do not allege that they are being denied access to an education, nor do they claim that students in 4201 schools derive no educational benefit from their respective programs. Plaintiffs allege only that their educational needs are not met as "adequately as the needs of non-handicapped persons are met." Amended Complaint, Paragraph 32. This is precisely the type of claim that was rejected in both *Rowley* and *Karl.* Accordingly, plaintiffs' EHA claims must be dismissed.

2. *The Rehabilitation Act § 504 and Constitutional Claims*

(a) *State Defendants*

■ The Amended Complaint also asserts claims under the Rehabilitation Act § 504, 29 U.S.C. § 794, and under 42 U.S.C. § 1983 for alleged violations of the First, Ninth and Fourteenth Amendments to the United States Constitution. I note at the outset that plaintiffs have not attempted to identify the First or Ninth Amendments rights that were allegedly violated by the State or Federal defendants. The Amended Complaint states only that "defendants have failed to give the class an appropriate free education designed to meet the educational needs of handicapped persons, all of which is in violation of the First, Ninth and Fourteenth Amendments to the Constitution of the United States." Amended Complaint, ¶ 33. There is no explanation of the First or Ninth Amendment claims in any of plaintiffs' memoranda of law. Under such circumstances, the Amended Complaint fails to state a claim under the First and Ninth Amendments and, therefore, those claims are dismissed. *Persico v. Gunnell,* 560 F.Supp. 1128, 1138 (S.D.N.Y. 1983).[5]

■ The Supreme Court has recently held that "where the EHA is available to a handicapped child asserting a right to a free appropriate public education under either the EHA or the Equal Protection Clause of the Fourteenth Amendment, the EHA is the exclusive avenue through which the child and his parents or guardi-

---

**5.** There are relatively few cases recognizing specific justiciable rights arising from the Ninth Amendment. One line of authority does recognize that the Ninth Amendment protects certain fundamental rights not enumerated in the Constitution. *See, e.g., Griswold v. Connecticut,* 381 U.S. 479, 496, 85 S.Ct. 1678, 1688, 14 L.Ed.2d 510 (1965) (Goldberg, J. concurring); *Keeler v. Consolidated Rail Corporation,* 582 F.Supp. 1546, 1551 (Regional Rail Reorg.Ct.1984); *Gasper v. Louisiana Stadium & Exposition District,* 418 F.Supp. 716, 721 (E.D.La.1976), *aff'd* 577 F.2d 897 (5th Cir.1978), *cert. denied* 439 U.S. 1073, 99 S.Ct. 846, 59 L.Ed.2d 40 (1979). The only conceivable basis for plaintiffs' Ninth Amendment claim is an argument that handicapped children have a fundamental right to a free appropriate public education. The Supreme Court has expressly held, however, that disparities in funding for the education of various groups of students does not impair any fundamental rights. *San Antonio School District v. Rodriguez,* 411 U.S. 1, 37, 93 S.Ct. 1278, 1299, 36 L.Ed.2d 16 (1973). "Whatever merit [the] argument might have if a state's financial system occasioned an absolute denial of educational opportunities to any of its children, that argument provides no basis for finding an interference with fundamental rights where only relative differences in spending levels are involved...." *Id.* As there is no allegation that plaintiffs in the present case were absolutely denied educational opportunities, they do not state a Ninth Amendment claim for denial of a fundamental right.

It is even more difficult to conceive of any possible basis for plaintiffs' First Amendment claims. There is simply no allegation in the Amended Complaint nor statements in the stipulation indicating that the defendants' conduct in setting salaries for teachers at 4201 schools in any way impairs plaintiffs' various rights guaranteed by the First Amendment.

ans can pursue the claim." *Smith v. Robinson*, —— U.S. ——, 104 S.Ct. 3457, 3470, 82 L.Ed.2d 746 (1984). The Court noted that Congress intended that remedies under the EHA preempt parallel remedies under § 1983. It is therefore appropriate to grant summary judgment dismissing the Fourteenth Amendment § 1983 claims insofar as they challenge the alleged failure to provide a free appropriate public education.

Section 504 of the Rehabilitation Act generally prohibits discrimination against the handicapped in any program or activity receiving federal financial assistance. 29 U.S.C. § 794. In *Robinson*, the Court held that the EHA preempts remedies under § 504 in situations where § 504 merely provides the same substantive rights as those that are available under the EHA. 104 S.Ct. at 3473–74. *Accord, Irving Independent School District v. Tatro*, —— U.S. ——, 104 S.Ct. 3371, 3379, 82 L.Ed.2d 664 (1984) ("Section 504 is inapplicable when relief is available under the Education of the Handicapped Act to remedy a denial of educational services"). This holding was limited by the observation that where the State provided "services beyond those required by EHA, but discriminatorily denied those services to a handicapped child, § 504 would remain available" as a source of relief. *Robinson*, 104 S.Ct. at 3473 note 22.

■ In deciding the State defendants' motion for summary judgment, all inferences to be drawn from the facts asserted in the State defendants' papers must be viewed in the light most favorable to plaintiffs. *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970). Furthermore, the factual allegations in the Amended Complaint, to the extent supported by the stipulation, should be regarded as true. *See Burtnieks v. City of New York*, 716 F.2d 982, 984 (2d Cir.1983). If it is accordingly assumed that the State of New York provides teacher services to public schools

beyond that which would be required by the EHA,[6] the allegedly discriminatory denial of those services to 4201 students, through lower teacher salaries, could possibly state a claim under § 504. This conclusion is supported by the Secretary of Education's regulations interpreting § 504. The regulations provide that an "appropriate education" is one that "meet[s] the educational needs of handicapped persons as adequately as the needs of non-handicapped persons are met...." 34 C.F.R. § 104.33(b)(i). Under the authority of footnote 22 in the *Robinson* opinion and 34 C.F.R. § 104.33(b)(i), I believe that the Amended Complaint states a claim under § 504.

■ Under this same theory, I conclude that the Amended Complaint also states a claim under § 1983 for alleged violations of the Equal Protection Clause of the Fourteenth Amendment insofar as the Amended Complaint alleges that the State provides educational services to non-handicapped students beyond those required by the EHA, but discriminatorily denies those services to handicapped children. In *Robinson*, the Court held only that the EHA preempts equal protection claims under § 1983 when a handicapped child is asserting a right to an appropriate free public education. 104 S.Ct. at 3470. Prior to the decision in *Robinson*, the Second Circuit had similarly concluded that the EHA preempts parallel remedies under § 1983, but held that a handicapped child could seek relief under § 1983 when relief was not available under the EHA. *Quackenbush v. Johnson City School District*, 716 F.2d 141, 147–49 (2d Cir.1983). In the present case, plaintiffs' claim for equal educational services is not remediable under the EHA, and therefore may be actionable under § 1983.

■ The next problem is how to resolve the cross-motions for summary judgment with respect to the § 504 claims and parallel equal protection claims. I find that

---

**6.** As noted above, the EHA requires only that the State provide handicapped students with such instruction and support services that will enable the students to "benefit educationally" from the instruction. *Rowley*, 458 U.S. at 203, 102 S.Ct. at 3049.

there are numerous questions of material fact, not resolved by the stipulation, which plainly preclude granting plaintiffs' motion for summary judgment on these claims. The stipulation contains only the broadest assertions of certain facts that do not even come close to resolving the critical factual questions that must be resolved in this case. I will note only the most essential of the many unresolved questions of material fact. First, the most fundamental question is whether teachers at 4201 schools are in fact paid less than teachers at public schools in New York State. This, in turn, requires resolution of two subsidiary questions: (a) What are teachers paid in New York public schools? In this regard, it is noteworthy that paragraph 6 of the stipulation says only that "[t]here are *different* salary schedules prevailing" for teachers working in various specified public and private educational programs. (Emphasis added). There is no indication that 4201 teachers' salaries are necessarily lower than the salaries paid to teachers in the public schools. (b) Whether 4201 schools in fact reduce or eliminate any possible disparities in pay by supplementing 4201 teachers' salaries with the school's own funds or funds from other sources? The second major question concerns causation. Specifically, whether it can be shown that the education in 4201 schools is, in fact, inferior to education in public schools because of the alleged salary differentials. This requires resolution of such questions as whether there is, in fact, higher teacher turnover in 4201 schools, and if so, whether this turnover has actually diminished the quality of education in 4201 schools.

█ Where questions of material fact are not resolved by a stipulation, or the stipulation is equivocal, summary judgment must be denied. 10A C. Wright, A. Miller, and M. Kane, *Federal Practice and Procedure,* § 2724, at 75 (1983). Accordingly, plaintiffs' motion for summary judgment must be denied.

In opposition to the State defendants' motion for summary judgment, plaintiff has offered only the conclusory allegations

in the Amended Complaint and the inconclusive facts set forth in the stipulation. While such a showing would normally be inadequate to resist a properly supported motion for summary judgment, *see* 10A Wright, Miller and Kane, § 2727 at 148, the State defendants have not properly supported their motion for summary judgment. They have not offered any evidence beyond the stipulation to show the absence of any questions of material fact. Consequently, the State defendants' motion never triggered plaintiffs' obligation to present evidence in opposition to the motion for summary judgment. *Id.* at 138–42. The State defendants' motion for summary judgment must also be denied with respect to the § 504 claims and related equal protection claims.

### (b) *The Federal Defendants*

The Federal defendants have also moved for summary judgment dismissing the claims against them for lack of standing, lack of subject matter jurisdiction, and failure to state a claim upon which relief can be granted.

On the standing issue, the Federal defendants raise essentially the same arguments that were raised and rejected on their prior Rule 12(b)(6) motion. The stipulation does not contain any facts bearing on the unresolved standing issues: whether plaintiffs have suffered distinct and personal injuries, and whether those injuries could be redressed by any relief against the Federal defendants; nor have the Federal defendants offered any new evidence in support of their summary judgment motion. Again, where neither party has put forth evidence showing the absence of questions of material fact, summary judgment must be denied.

The Federal defendants also seek dismissal on the grounds that neither the EHA nor § 504 implies a private right of action against the Federal government to compel a cut-off of financial assistance to State agencies. This argument was also raised and rejected on the prior Rule 12(b)(6) motion. The Federal defendants cite only one

additional case that was not considered in conjunction with the prior motion, *Brandon v. Wisconsin Department of Public Instruction*, 595 F.Supp. 740 (E.D.Wis. 1984). In *Brandon*, the court summarily held that 20 U.S.C. § 1416 [the EHA] does not empower an individual to institute an action to compel the Federal government to withhold funds paid to a state under the EHA. The court did not cite any authority nor offer any explanation for this holding. Furthermore, *Brandon* does not address plaintiffs' only surviving statutory claims against the Federal defendants: the § 504 claims. Accordingly, I do not believe that *Brandon* constitutes such persuasive authority as would compel me to reverse my prior decision by now granting summary judgment to the Federal defendants on the § 504 claims.

 Lastly, the Federal defendants seek summary judgment dismissing the constitutional claims. As noted above, the Amended Complaint seeks relief under the First, Ninth and Fourteenth Amendments, and 42 U.S.C. § 1983. The Federal defendants persuasively argue that claims under § 1983 and the Fourteenth Amendment cannot be brought against federal agencies or officials because such parties are not acting under color of state law. There is no allegation of violations of the Fifth Amendment in the Amended Complaint. Likewise, as discussed above, I can see no basis in the Amended Complaint for claims under the First or Ninth Amendments, nor have plaintiffs explained the basis for such claims. Accordingly, the Federal defendants' motion for summary judgment is granted with respect to all of the constitutional claims and the claims under § 1983.

*Concluding Observations*

These various motions and the denial of parts thereof make it clear that the core problem in this case is essentially the lack of prosecution. Six years have elapsed since this case was commenced, but none of the parties have yet engaged in any meaningful discovery. Plaintiffs have been content to file repetitive motions with this Court without developing the factual bases necessary to support their claims. In the interests of finally spurring the parties into progress on in this case, I am now setting a firm discovery deadline and date for a pretrial conference. All discovery in this matter shall be completed by no later than October 4, 1985, and the parties shall appear before the Court for a pretrial conference on November 5, 1985 at 4:30 P.M. Plaintiffs are hereby advised that if renewed motions for summary judgment are presented after the date of the discovery deadline, and plaintiffs fail to come forward with any new evidence establishing the factual bases for their claims, I will consider dismissing this action for lack of prosecution.

SO ORDERED.