Melissa **DETSEL**, an infant by her mother and next friend, **Mary Jo DETSEL**, Plaintiff,

v.

**BOARD OF EDUCATION OF the AUBURN ENLARGED CITY SCHOOL DISTRICT, Peter Kachris, individually and as Superintendent of the Auburn Enlarged City School District, Gordon Ambach, Commissioner of the New York State Education Department, Stephen Bandas, individually and as Commissioner of the Cayuga County Department of Social Services, and Cesar Perales, individually and as Commissioner of the New York State Department of Social Services, Defendants.**

No. 84–CV–1353.

United States District Court,
N.D. New York.

June 23, 1986.

Legal Services of Cent. New York, Inc., Syracuse, N.Y., for plaintiff; Joanne Hunt Piersma, of counsel.

Treman & Clynes, Office of Harris, Beach, Wilcox, Rubin and Levey, Ithaca, N.Y., for defendants Bd. of Educ. of Auburn City School Dist. and Peter Kachris; Edward C. Hooks, of counsel.

Robert D. Stone, Albany, N.Y., for defendant Ambach; James H. Whitney, of counsel.

### MEMORANDUM–DECISION AND ORDER

McCURN, District Judge.

#### 1.  *Background*

The plaintiff, Mary Jo Detsel, has brought this action on behalf of her daughter Melissa, a handicapped student who attends a special education class at the Seward Elementary School in Auburn, seeking relief under the Education of All Handicapped Children Act, 20 U.S.C. § 1401 *et seq.* (EAHCA); section 504 of the Rehabilitation Act, 29 U.S.C. § 794; and 42 U.S.C. § 1983. The plaintiff asks for declaratory and injunctive relief compelling

the defendants Board of Education of the Auburn Enlarged City School District (Board of Education); Peter Kachris, Superintendent of the Auburn Enlarged City School District; and, Gordon Ambach, Commissioner of the New York State Education Department; to provide Melissa with constant nursing care while she attends public school

Melissa is a seven-year-old child who suffers from severe physical disabilities. In order to live, she requires constant respirator assistance and a continuous supply of forty percent oxygen. All of the parties to the instant action agree that Melissa's condition requires constant vigilance by an individual trained to monitor her health. The present controversy concerns just who must provide her with this care.

Formerly, the Cayuga County Department of Social Services had provided Melissa with the services of one nurse from 7:00 a.m. until 3:00 p.m. and of a second nurse from 11:00 p.m. until 7:00 a.m. However, the Department of Social Services refused to continue paying for the services of the first nurse who accompanied Melissa to school when she began attending kindergarten in 1983. Melissa enrolled in a BOCES Option III multiply handicapped class at the Seward Elementary School upon the recommendation of the school district's Committee on the Handicapped (COH) which had classified her as "other health impaired." At that time, the Board of Education protested that it was not obligated to compensate the nurse employed to render Melissa assistance during school hours, but it did agree to pay her until the plaintiff ascertained whether other sources of payment were available.

Upon notification by the school district that it would not shoulder the expense of extensive in-school nursing care, plaintiff requested an impartial hearing pursaunt to 20 U.S.C. § 1415(b) and the N.Y.Educ. Law § 4404(1) to review this decision. On December 14, 1984, the Hearing Officer found that the disputed nursing care did constitute "related services" within the meaning of the EAHCA. Consequently, the Hear-ing Officer determined that the Board of Education was indeed obligated to provide and pay for these services. The Board of Education appealed this determination. By a decision dated February 25, 1985, the New York State Commissioner of Education, Gordon Ambach, reversed the Hearing Officer's order directing the school district to "provide a suitably trained person to attend to [Melissa's] needs while [attending] a special education class." Decision of Hearing Officer, Marc Reitz, Ex. A, Defendant Ambach's Submitted Record of Appeal; Decision of New York State Commissioner of Education, Ex. F, Defendant Ambach's Reocrd of Appeal, at p. 1. The Commissioner found that the services sought by the plaintiff were not "related services" within the meaning of the EAHCA. The plaintiff now seeks judicial review of the Commissioner's decision.

## 2. *Discussion*

### A. *Education of All Handicapped Children Act (EAHCA).*

The Education of All Handicapped Children Act, 20 U.S.C. § 1401 *et seq.*, creates a comprehensive scheme for assuring that handicapped children receive a "free appropriate public education." 20 U.S.C. § 1401. A "free appropriate public education" includes "special education" and "related services." No state or local educational agency may receive federal funding unless it provides the handicapped with this opportunity. 20 U.S.C. § 1412(1). An individualized education program (IEP) must be developed for each handicapped child which describes the educational needs of the child and the specially designed instruction and related services to be utilized in meeting those needs. § 1401(19). In addition, the EAHCA imposes detailed procedural requirements upon States receiving federal funds in accordance with the provisions of the Act. A parent aggrieved by the decision of a state educational agency may commence an action in either state or federal court when the disputed determination relates to the education and evaluation of the child. §§ 1415(b), 1415(e).

In accordance with the foregoing mandates, the school district's COH studied Melissa's background and developed an IEP. As noted hereinbefore, the COH recommended that she be classified as "other health impaired" and placed in a special education class for the multiply handicapped. The suggested IEP listed the particular therapies or "related services" to be rendered in connection with Melissa's educational program, including speech and language therapy, physical therapy, occupational therapy, adaptive physical education, and *"appropriate school health services."* *See* August 29, 1983, COH Recommendation to the Board of Education, Defendant Ambach's Submitted Record of Appeal, Ex. C. The plan, however, failed to identify the specific "health support services" needed. The only question before the court is the extent to which "school health support services" are required by the EAHCA. As already noted, the Hearing Officer determined that the extensive medical care required by Melissa was encompassed within the term "related services" as set forth in the EAHCA whereas the Commissioner concluded it was not.

### B. *Related Services.*

A "free appropriate public education" includes "special education and related services." § 1401(18). These related services include:

> [t]ransportation, and such developmental, corrective, and *other supportive services* (including speech pathology and audiology, psychological services, physical and occupational therapy, recreation, and *medical* and counseling *services, expect that such medical services shall be for diagnostic and evaluation purposes only) as may be required to assist the handicapped child to benefit from special education,* and includ[e] the early identification and assessment of handicapping conditions in children. (emphasis added)

20 U.S.C. § 1401(17).
The Regulations, promulgated by the Department of Education, provide additional assistance in delineating the scope of the term "related services." For example, health services provided by a "school nurse or other qualified person" are specifically denoted as "related services." 34 C.F.R. §§ 300.13(a), 300.13(b)(10). Medical services are restricted, as in the statute, to those services rendered for diagnostic or evaluation purposes, and the regulations further restrict allowable medical services to those performed by a licensed physician. 34 C.F.R. § 300.13(a), 300.13(b)(4). Consequently, under the Regulations, therapeutic services rendered by a school nurse or "other qualified person" could qualify as "related services," but similar services performed by a licensed physician would be excluded as non-qualifying "medical services." *See Irving Independent School District v. Tatro,* 468 U.S. 883, 104 S.Ct. 3371, 3377, 82 L.Ed.2d 664 (1984). These regulations are entitled to deference. *Id.*

In the instant action, the plaintiff avers that the extensive medical attention required by her daughter while in school qualifies as a "related service." An examination of the record, including the testimony of the medical personnel responsible for Melissa's care, reveals that while in school, Melissa's nurse must carry out several procedures. First, she must check Melissa's vital signs and administer medication through a tube to the child's jejunum. Moreover, she must perform a procedure known as a "P, D and C" which calls for the ingestion of saline solution by the child into her lungs; the nurse subsequently strikes her about the lungs for four minutes and then suctions out any mucus collected in her lungs. Also, the individual who accompanies Melissa must be prepared to perform cardio-pulmonary resuscitation because of complications arising from a tracheotomy. Furthermore, Melissa is likely to suffer from respiratory distress which has been described as a life-threatening condition by her doctor. The school physician has testified that the foregoing procedures would require the services of a licensed practical nurse (LPN) or a registered nurse. Melissa's own physician has testified that the services of a school nurse

would be inadequate. *See* Exs. A, B, C, and D, Defendant Ambach's Motion Papers.

The sole issues before the court are whether these services are mandated by the EAHCA as "supportive services ... required to assist a handicapped child to benefit from special education," whether these services constitute "health services" to be provided by a school nurse or "other qualified person," or whether the foregoing services must be excluded from the definition of related services as "medical services" required for a purpose other than diagnosis or evaluation.

Before addressing the merits of the case, the court feels constrained to discuss the appropriate standard of judicial review.

### C. *Standard of Judicial Review.*

The EAHCA permits an aggrieved parent to bring an action in district court. In reviewing the decision of the state educational agency,

> "[t]he court shall review the records of the administrative proceeding, shall hear additional evidence at the request of a party, and basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."

20 U.S.C. § 1415(e)(2); *Burlington School Committee v. Department of Education,* 471 U.S. 359, 105 S.Ct. 1996, 2002, 85 L.Ed.2d 385 (1985). On the basis of the record before it, the court finds that the procedural requirements imposed by the act have been observed; therefore, the court need only determine whether Melissa has been denied access to the State's educational system. In fact, we "are explicitly cautioned not to impose a particular substantive educational standard on a State or to require equality of opportunity for handicapped children in education." *Karl v. Board of Education of Geneseo C. School District,* 736 F.2d 873, 876 (2d Cir.1984) (citing *Board of Education v. Rowley,* 458 U.S. 176, 191–203, 102 S.Ct. 3034, 3043–3049, 73 L.Ed.2d 690); *accord Council for the Hearing Impaired v. Ambach,* 610 F.Supp. 1051 (E.D.N.Y.1985). Consequently, the court must determine whether the services enumerated above qualify as "supportive services" necessary for Melissa to "benefit from instruction." *See Rowley,* 458 U.S. 176, 102 S.Ct. 3034. If they are, then the school district and the board of education must provide and pay for them unless they fall within the exclusion for therapeutic medical services.

### D. *EAHCA Claim—Irving Independent School District v. Tatro Decision: Supportive Services or Medical Services?*

The defendants have moved for summary judgment asking the court to hold that the medical care in question does not constitute a "related service" within the meaning of the EAHCA. It is their position that although the disputed services do not necessarily entail the presence of a physician, they are essentially medical in nature, and, therefore, must be excluded under § 1401(17) as medical services of a therapeutic nature. The evidence before the court indicates that the care required by Melissa should be administered by a LPN or registered nurse and that the availability of a school nurse is inadequate. The defendants urge this court to ignore the technical distinction in the Regulations which would exclude therapeutic services when performed by a physician but would not exclude services of this type when performed by a school nurse or other qualified person. Essentially, the defendants' argument is that the question of whether a supportive service is a medical service is a matter of degree. They ask the court to consider the type of service required as the crucial element in determining which category encompasses it, not the status of the person performing the task.

Plaintiff, on the other hand, cross-moves for summary judgment, and asks the court to hold that, as a matter of law, the disputed services constitute "supportive services ... required to assist [Mellisa] to benefit from special education." Plaintiff claims that because the procedures re-

quired may be performed by a qualified person, other than a physician, they constitute "school health services," and do not fall within the exclusion for therapeutic medical services enunciated in the EAHCA and the regulations promulgated thereto. In contrast to the defendants' argument, the plaintiff focuses entirely on the qualifications of the person performing the service and rejects any distinction based upon the character of the service.

In the leading case of *Irving Independent School District v. Tatro*, 468 U.S. 883, 104 S.Ct. 3371, 82 L.Ed.2d 664 (1984), the Supreme Court construed the EAHCA and its implementing regulations. In *Tatro*, the Court held that the provision of clean intermittent catheterization (CIC) was a "supportive service" within the terms of the Act. In that case, petitioner was an eight-year-old child born with spina bifida. The child suffered from speech impairments and a bladder dysfunction which required her to be catheterized every four hours in order to avoid renal injury. The procedure was described as a simple one which the child would soon be able to perform herself. Consequently, the Court ruled that the CIC was indeed a "supportive service ... required to assist a handicapped child to benefit from special education." *Id.*, 104 S.Ct. at 3376. The Court also determined that the provision of CIC did not constitute an excluded medical service. Accordingly, the inquiry of this court must be two-fold: first, do the services in question qualify as "supportive services" and second, do they fall within the "medical services" exclusion?

In *Tatro*, the Supreme Court analogized "supportive services" to services which enable a child to remain at school during the day. *Id.* at 3377. Such services provide the child with meaningful access to the education envisioned by Congress. *Id.* The CIC was characterized as a service which was "no less related to the effort to educate than services that enable[d] the child to reach, enter, or exit the school." *Id.; see also Tokarcik v. Forest Hills School School District*, 665 F.2d 443 (3d Cir.1981) *cert. denied sub nom Scanlon v.*

*Tokarcik*, 458 U.S. 1121, 102 S.Ct. 3508, 73 L.Ed.2d 1383 (1982) (finding CIC a related service); *State of Hawaii Department of Education v. Katherine D.*, 727 F.2d 809 (9th Cir.1983), *cert. denied*, — U.S. —, 105 S.Ct. 2360, 86 L.Ed.2d 260 (1985) (finding repositioning of suction tube in child's throat a related service). In the case at bar, provision of the disputed services would undoubtedly enable Melissa to attend school during the day. The parties admit that without this attention, Melissa must receive only in-home instruction. However, it does not necessarily follow that because Melissa can attend school only with the assistance of these services, they must be provided by the school board.

The instant case is decidedly different from the situation presented in *Tatro*. The care essential for Melissa's well-being is complicated and requires the skill of trained health professionals. In its analysis, the Supreme Court recognized that although meaningful access to education must be afforded handicapped children, medical services which would entail great expense are not required. In construing the "medical services" exclusion, the Court determined that the Secretary of Education had reasonably interpreted § 1401(17) by concluding that Congress had intended to "spare schools from an obligation to provide a service that might well prove unduly expensive and beyond the range of their competence," and upheld the limitation of the "medical services" exclusion to the services of a physician or hospital which, it noted, were far more expensive than school nursing services. The Court found, therefore, that the administration of CIC was a permissible school nursing service.

It is clear that the Supreme Court considered the extent and nature of the service performed in the *Tatro* decision. Unlike CIC, the services required by Melissa are extensive. This is not a simple procedure which the child may perform herself. Constant monitoring is required in order to protect Melissa's very life. The record indicates that the medical attention required by Melissa is beyond the competence of a

school nurse. A specially trained individual is required, preferably a health professional. The Supreme Court, in *Tatro*, reasoned that the regulations had permissibly interpreted § 1401(17) in providing that school nursing services did not fall within the medical services exclusion. In so doing, the Court stated that Congress could well have decided to exclude costly and complicated services. *Id.*, 104 S.Ct. at 3778. Indeed, the Court noted that "children with serious medical needs are still entitled to an education. For example, the Act specifically includes instruction in hospitals and at home within the definition of 'special education.'" *Id.* at n. 11. This dictum is in line with the Court's earlier decision in *Rowley* wherein it held that Congress did not intend to "maximize each handicapped child's potential." *Id.*, 458 U.S. at 199, 102 S.Ct. at 3047 (holding that Act did not require provision of a sign language interpreter for a deaf child enrolled in public school).

In light of the foregoing, the court holds that the EAHCA does not require the defendants school district and board of education to provide a severely physically disabled child with contant, in-school nursing care. As recognized in the *Tatro* decision, the "medical services" exclusion evidences Congress' concern that schools might otherwise be subjected to excessive costs and the burden of health care. On the other hand, simple school nursing services do not similarly burden the schools, and, therefore, are permissible under § 1401(17) of the EAHCA. In the case at bar, the services in question do not fall squarely within the terms of the "medical services" exclusion because they need not be performed by a physician, nor do they qualify as simple school nursing services. *See Tatro* (finding the CIC a simple procedure which did not even require the services of a nurse). The extensive, therapeutic health services sought by the plaintiff on behalf of her daughter more closely resemble the medical services specifically excluded by

§ 1401(17) of the EAHCA. Even though they do not fulfill the "physician" requirement set forth in 34 C.F.R. 300.13(b)(4), the exclusion of the disputed services is in keeping with its spirit. Furthermore, the *Tatro* decision does not require the provision of all health services, regardless of their magnitude, if performed by one other than a physician. The Supreme Court held only that school nursing services of a simple nature are not excludable as therapeutic "medical services."

For the reasons adduced above, the court grants the defendants' motion for summary judgment dismissing the plaintiff's claim that the failure to provide the services enumerated hereinbefore constitutes a violation of § 1401(16), (17) and (18) of the EAHCA. Consequently, plaintiff's motion for summary judgment is denied.

### E. *Rehabilitation Act and § 1983 Claims.*

The plaintiff's claims brought pursuant to the Rehabilitation Act and 42 U.S.C. § 1983 must be dismissed. The EAHCA constitutes her exclusive form of relief. *See Smith v. Robinson*, 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984).[1]

### F. *Pendent State Claims.*

All pendent state claims asserted by the plaintiff are dismissed.

The complaint in its entirety is dismissed.

IT IS SO ORDERED.

---

1. The court recognizes that *Robinson* left open the question whether such a claim would be precluded by the EAHCA. *Id.* at n. 17. However, the court finds that plaintiff was accorded due process.