BEVIN H. a minor who sues by her parents and next friends, MICHAEL and Elizabeth H. and Michael and Elizabeth H.

v.

D. Kay WRIGHT, Acting Secretary of Education, Commonwealth of Pennsylvania and the Pittsburgh School District.

Civ. A. No. 86–1830.

United States District Court,
W.D. Pennsylvania.

Aug. 4, 1987.

**72**

Janet F. Stotland, Education Law Center, Inc., Philadelphia, Pa., Nancy A. Hubley, Pittsburgh, Pa., for plaintiffs.

David H. Dille, Asst. Sol., Thomas F. Halloran, Sr. Deputy Atty. Gen., Pittsburgh, Pa., for defendants.

## OPINION

GERALD J. WEBER, District Judge.

Bevin H. is a 7 year old girl who suffers severe mental and physical handicaps. At issue here is whether the School District, under the Education for all Handicapped Children Act (EAHCA), 20 U.C.S. § 1401 et seq., must bear the cost of nursing services necessary to enable Bevin to attend school.

The issue presented is a difficult one, both in the complexity of the statutory and regulatory scheme and in the ramifications for Bevin of our decision. After an extensive review of the statute, the regulations, and still developing case law, we conclude that the EAHCA does not require the District to provide the extensive nursing services which Bevin requires.

### FACTS

The essential facts are not in dispute. The parties have submitted a copy of the administrative record, and they have apprised us of developments since the conclusion of administrative proceedings.

At this writing, Bevin is 7 years old and resides with her parents. She suffers from multiple handicaps, principally Robinow syndrome (fetal face syndrome), severe broncho-pulmonary dysplasia, profound mental retardation, spastic quadriplegia, seizure disorder and hydrocephalus. She is also legally blind. She breathes through a tracheostomy tube and is fed and medicated through a gastrostomy tube.

As Bevin neared school age, her parents sought an educational program to improve on her severely delayed development. In 1984 the Pittsburgh School District agreed to admit Bevin to its Pioneer School in a special curriculum for handicapped children, with the stipulation that Bevin's parents would bear the cost of the nursing services and related equipment which Bevin required. The parents agreed to this arrangement. It is undisputed that without these nursing services, Bevin would be unable to attend school.

In October 1984, Bevin was placed in a classroom with 6 other handicapped children. The Individualized Educational Program (IEP) developed for Bevin in consultation with her parents provides for auditory, visual and tactile stimulation and fine and gross motor development. The goal is to improve Bevin's awareness of and interaction with the world around her. All parties agree that, with the exception of the nursing services issue, this program is the most appropriate and least restrictive educational plan for Bevin.

For the 1984–85 school year, Bevin's parents agreed to provide the full-time nurse and related equipment which Bevin requires at all times. The cost of this nursing service, from the time Bevin leaves home in the morning until she returns home from school in the afternoon, is about $1,850 per month and was paid for by the parents' health insurance. The fact that the District did not have to pay for these services was apparently a salient factor in the District's decision to admit Bevin to a classroom.

Unfortunately, Bevin's insurance coverage has a ceiling of $500,000 and by the time this suit was filed her medical needs had already consumed $120,000. In addition to the $1,850 per month for the attending nurse for school, Bevin's other routine medical expenses are between $500 and $1,000 per month. The prospect of exhausting Bevin's medical coverage prompted her parents to request that the School District assume the expense of the nurse who must care for Bevin in school. The District refused, prompting the institution of administrative proceedings and ultimately this action.

The services Bevin requires at school are extensive. The attending nurse must accompany Bevin to and from school. She is responsible for the care and cleaning of the tracheostomy and gastrostomy tube. She administers a constant oxygen supply to Bevin. She supervises positioning for physical and occupational therapy. She administers chest physical therapy each day to break up mucous, and must suction the mucous from the lungs. Above all though, the nurse must remain with Bevin at all times because of the constant possibility of a mucous plug in the tracheostomy tube. Such a plug is a common event, occurring several times each day, and must be cleared by the nurse within 30 seconds to prevent injury to Bevin.

In the 1984–85 school year, Bevin attended class from 8:30 A.M. to 12:30 P.M., Monday through Thursday, with a full school day on Friday. On a typical school day, the nurse accompanies Bevin to school in a cab, suctioning the tracheostomy tube as needed. On arrival at school, Bevin is fed through the gastrostomy tube. She then has a classroom session with her teacher and classmates. This is followed by a period of chest physical therapy in which mucous is suctioned from the lungs. Bevin returns to class for further activities and is then escorted home by the nurse. Because of the nature of Bevin's condition, and specifically because of the possibility of a mucous plug interfering with breathing, the nurse is with Bevin every moment of the school day.

In contrast to Bevin, her 6 classmates, all with multiple handicaps, do not require the extensive nursing attention which Bevin requires. Although each of these children has a tracheostomy, each is able to care for and clear the tube without assistance. The class is conducted by a teacher and 2 aides, but no nurse is assigned to the class.

There is some dispute about the amount of progress that Bevin has made in her educational program. Bevin's mother and nurse report that Bevin's interaction with people has increased, that she is more aware of familiar voices and sounds, and she appears to express feelings of joy.

Standing activities have improved weight-bearing capacity and permitted growth. On the other hand, Bevin's teacher indicates that while some progress has been noted, it is inconsistent and minimal. However, as noted above, there is no dispute that this program is the most appropriate and least restrictive for Bevin. Alternative programs such as at-home instruction or residential placement have not been presented to the court.

After the School District refused to assume the costs of Bevin's nursing services, the parents instituted administrative proceedings under the Act. On November 21, 1985, a hearing officer ruled in favor of the parents. The District took exceptions to the decision and on June 6, 1987 the defendant Pennsylvania Secretary of Education reversed the hearing officer. Plaintiffs then filed this action pursuant to the Act, 20 U.S.C. § 1415(e)(2). The parties have now submitted cross-motions for summary judgment with briefs and supporting evidentiary material.

## DISCUSSION

The Education for All Handicapped Children Act (EAHCA), 20 U.S.C. § 1401 et seq., provides federal funding to the states to assist in educating physically and mentally handicapped children, provided the states comply with the various requirements imposed by the statute and regulations. The avowed purpose of the Act is to provide a "free appropriate education" to all handicapped children. 20 U.S.C. § 1412(1).

A free appropriate education is defined by the Act as "special education and related services", to be provided without charge to the parents and child. 20 U.S.C. § 1401(18). "Related services" are further defined as:

... transportation, and such development, corrective, and other supportive services (including pathology and audiology, psychological services, physical and occupational therapy, recreation, and medical and counseling services, except that such medical services shall be for diagnostic and evaluation purposes only)

as may be required to assist a handicapped child to benefit from special education, and includes the early identification and assessment of handicapping conditions in children.

20 U.S.C. § 1401(17). It is this provision which is at the heart of the present dispute.

Plaintiffs contend that "related services" as defined by the regulations include the daily nursing care which makes it possible for Bevin to attend school. Defendants argue that this nursing care is actually "medical services" not provided for diagnosis or evaluation and is therefore specifically excluded from "related services".

A number of courts have had the opportunity to consider the "related services" provisions in a variety of factual settings. *Board of Education v. Rowley*, 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982) (sign language interpreter for deaf child not required by Act); *Irving Independent School District v. Tatro*, 468 U.S. 883, 104 S.Ct. 3371, 82 L.Ed.2d 664 (1984) (intermittent catheterization is a related service); *Tokarcik v. Forest Hills School District*, 665 F.2d 443 (3d Cir.1981), *cert. denied sub nom. Scanlon v. Tokarcik*, 458 U.S. 1121, 102 S.Ct. 3508, 73 L.Ed.2d 1383 (1982) (intermittent catheterization is a related service); *Kruelle v. New Castle County School District*, 642 F.2d 687 (3d Cir.1981) (residential placement program); *Department of Education v. Katherine D.*, 727 F.2d 809 (9th Cir.1983) (tracheostomy care is a related service); *Alamo Heights School District v. State Board of Education*, 790 F.2d 1153 (5th Cir.1986) (transportation as a related service); *Detsel v. Board of Education*, 637 F.Supp. 1022 (N.D.N.Y.1986), aff'd per curiam 820 F.2d 587 (2d Cir.1987) (extensive nursing services are not related services). Among these cases, only *Detsel* involves services as extensive as those required by Bevin.

In attempting to divine the intended scope of "related services" we look to the Secretary's regulations. *Tokarcik*, 665 F.2d at 456. Unfortunately in this case the regulations offer limited assistance.

"Related services" as defined in the regulations include "school health services",
34 C.F.R. § 300.13(a), which are in turn defined as "services provided by a school nurse or other qualified person." 34 C.F.R. § 300.13(b)(10).

The medical services exception is more obliquely defined. As we have seen from a reading of the Act, "medical services", with the exception of those performed for diagnosis or evaluation, are not included in "related services" and are therefore not the responsibility of the school district. Rather than defining this exclusion, the regulations undertake only to further restrict those "medical services" which are included in "related services":

> "Medical services" means services provided by a licensed physician to determine a child's medically related handicapping condition which results in the child's need for special education and related services.

34 C.F.R. § 300.13(b)(4).

Plaintiffs seize upon this last definition. Because "medical services" are defined as those provided *by a physician*, and Bevin requires only nursing services, it is argued that the medical services exclusion does not apply. The determination of what is a medical service and therefore not the obligation of the school district is based solely on the status of the health care provider. The nature and extent of the services are irrelevant. If a doctor performs the service for other than diagnosis or evaluation, it is a "medical service" and excluded. If anyone else can perform the function, it is a related service which the District must pay for.

The same argument was made to the court in *Detsel v. Board of Education*, 637 F.Supp. 1022 (N.D.N.Y.1986), aff'd. per curiam 820 F.2d 587 (2d Cir.1987), a case remarkably similar to the present one. The Detsel child was multiply handicapped, with a tracheostomy and gastrostomy, and required much the same services and care as Bevin. Most significantly, both children because of the tracheostomy and their inability to care for it themselves, require the constant undivided attention of a nurse.

The *Detsel* court rejected the construction of "medical services" which plaintiffs advance here.

In the case at bar, the services in question do not fall squarely within the terms of the "medical services" exclusion because they need not be performed by a physician, nor do they qualify as simple school nursing services.... The extensive, therapeutic health services sought by the plaintiff on behalf of her daughter more closely resemble the medical services specifically excluded by § 1401(17) of the EAHCA. Even though they do not fulfill the "physician" requirement set forth in 34 C.F.R. 300.13(b)(4), the exclusion of the disputed services is in keeping with its spirit. (citations omitted).

637 F.Supp. 1022. The reasoning of the *Detsel* court is persuasive and equally applicable to the case at bar.

Plaintiffs bright line definitional construction of "medical services" would also appear to be foreclosed by the decision in *Tokarcik.* In determining that intermittent catherization was a related service, the Third Circuit stated:

"Related services" necessarily include what is required *within reason* to make such a setting possible for a child who can benefit from it. (emphasis supplied).

665 F.2d at 455. The court then examined the cost of the service, the time involved and the capacity of existing school health personnel to provide the service, in "considering whether congress reasonably could have intended to provide" the requested services. 665 F.2d at 456. The court did not limit its inquiry to the professional capacity of the health care provider.

This standard of reasonableness, rather than plaintiff's interpretation of the regulations, has been taken up at least implicitly by other courts. The *Detsel* court engaged in a balancing of the competing interests and indeed so did the Supreme Court in *Tatro.*

Plaintiffs seek solace and support in *Department of Education v. Katherine D.*, 727 F.2d 809 (9th Cir.1983) which held that tracheostomy care was a related service. However, that Court also concluded that the state "is required to make only those efforts to accommodate Katherine's needs that are 'within reason.'" (citing *Tokarcik*) 727 F.2d at 813. The Court proceeded not by ascertaining the status of the health care provider as plaintiffs urge here, but on a careful review of the nature and extent of the services required by the child and their impact on the school district.

We have set forth above in some detail the facts in the present case. The services required are varied and intensive. They must be provided by a nurse, not a layperson. They are time-consuming and expensive. Above all, the life threatening prospect of a mucous plug demands the constant attention of the nurse. Because of this need for constant vigilance, a school nurse or any other qualified person with responsibility for other children within the school could not safely care for Bevin.

It is the "private duty" aspect of Bevin's nursing services which distinguishes this case from the others. *Tatro, Tokarcik,* and *Katherine D.* all involved intermittent care which could be provided by the school district at relatively little expense in both time and money. The services Bevin requires are far beyond those, and to place that burden on the school district in the guise of "related services" does not appear to be consistent with the spirit of the Act and the regulations.

We are also fortified in our conclusion by the decision in *Board of Education v. Rowley,* 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). Although the Act presumes that all handicapped children are entitled to some form of education tailored to their individual needs and abilities, it does not require school districts to provide the best possible education without regard to expense. While no alternative educational programs for Bevin have been presented to us, we recognize that the Act is not restricted in application to classroom settings but envisions the need for specialized programs. Such an alternative may be appropriate for Bevin but the issue is not before us.

Finally, we do not intend to intimate that "related services" are only those services

which can be provided at low cost to the district or which can be performed by existing school personnel. To the contrary, the states reap the benefit of federal monies and the Act presumes that compliance with its tenets may require special services or the hiring of additional personnel at considerable expense. We simply hold that on the facts of the present case, the nursing services required are so varied, intensive and costly, and more in the nature of "medical services" that they are not properly includable as "related services."

## ORDER

AND NOW, in accord with the accompanying Opinion, IT IS HEREBY ORDERED that Summary Judgment is GRANTED in favor of defendants and against plaintiffs. The Clerk is DIRECTED to mark this matter CLOSED.