**MACOMB COUNTY INTERMEDIATE SCHOOL DISTRICT, Plaintiff and Counter–Defendant,**

v.

**JOSHUA S., A Minor, By His Parents, Defendant and Counter–Plaintiff,**

v.

**MICHIGAN BOARD OF EDUCATION, Counter–Defendant.**

Civ. A. No. 87–30073 PH.

United States District Court, E.D. Michigan, S.D.

April 20, 1989.

---

Dolores M. Coulter, Flint, Mich., Marguerite Schervish, Michigan Protection and Advocacy Service, Detroit, Mich., for defendant.

Frank J. Kelley, Atty. Gen., Gerald F. Young, Paul J. Zimmer, Jane D. Woodfin, Asst. Attys. Gen., Lansing, Mich., for counter-defendant Bd. of Ed.

Lynwood E. Beekman, White, Beekman, Przybylowicz, Schneider & Baird, P.C., Okemos, Mich., for MISD.

## MEMORANDUM OPINION AND ORDER

JAMES HARVEY, District Judge.

This matter is before the Court on cross-motions for summary judgment. This dispute concerns the obligation, or lack thereof, of the plaintiff to provide the defendant with transportation to and from school. More specifically, the issue is whether such transportation involves the implementation of "related services" as contemplated by the Education for All Handicapped Children Act (EAHCA), 20 U.S.C. § 1400 *et seq.* If not, the plaintiff need not transport the defendant.

### I.

The defendant is a severely multiply impaired student currently placed at a school within the plaintiff's district. The plaintiff does not dispute that the defendant is entitled to a "free, appropriate public education" within the meaning of the EAHCA, 20 U.S.C. § 1412(1). To this end, the parties agreed to the creation of an individual education plan (IEP) for the defendant. The IEP, while indicating that the defendant's education could take place either in his home or at a school, does not direct that the plaintiff must transport the defendant should the school option be exercised. Ex. YY. The defendant's parents objected to the IEP to the extent it denied the defendant transportation.

Consistent with the EAHCA, the defendant obtained a hearing with a local hearing officer concerning the denial of transportation. Following the testimony of some 22 witnesses and the introduction of 68 exhibits, the local hearing officer concluded that the plaintiff was not required to provide the defendant transportation, due to his "medically fragile nature." The officer's decision focused on two factors; first, the difficulty surrounding positioning the defendant in his wheelchair, and second, potential complications arising from the suctioning of the defendant's tracheostomy tube during transportation. The officer therefore recommended homebound care for the defendant.

On appeal from this decision, the state-level reviewing official reversed. Respecting the transportation issue, and the risks to the defendant, the reviewing official examined five factors: (1) the transporting vehicle; (2) the route taken; (3) impairment effects; (4) personnel; and (5) training and supervision of personnel. Recognizing the conflicting testimony concerning the degree of skill required of an aide during transportation, the reviewing official determined that the weight of the testimony indicated that "the bus environment does not in and of itself stand as a bar to the suctioning of tracheostomies in general and of Joshua's in particular." Op., p. 16. Additionally, regarding concerns about placing the defendant in his wheelchair, the reviewing officer found that given proper training, an aide could, if required, place the defendant into the chair.

The plaintiff subsequently filed this action, seeking *de novo* review of the record developed at the local hearing. 20 U.S.C. § 1415(e)(2). Having examined the record and the parties' briefs, the Court is prepared to decide the narrow issue of whether the requirements surrounding the transportation of the defendant fall within the "related services" that federally-funded states must provide in educating handicapped children. 20 U.S.C. § 1413(a)(4).

### II.

States participating in the EAHCA must create plans that conform to the EAHCA's statutory directive. A critical portion of that directive requires the provision of

"special education and related services;" such related services defined to include

transportation, and such developmental, corrective, and other supportive services (including speech pathology and audiology, psychological services, physical and occupational therapy, recreation, and medical and counseling services, except that such medical services shall be for diagnostic and evaluation purposes only) as may be required to assist a handicapped child to benefit from special education....

20 U.S.C. §§ 1413(a)(4); 1401(17). The Supreme Court in interpreting this section, along with its associated regulations, has found that a two-part inquiry is relevant. *Irving Independent School Dist. v. Tatro,* 468 U.S. 883, 104 S.Ct. 3371, 82 L.Ed.2d 664 (1984). First, we must determine whether the services incidental to transporting the defendant are "supportive services ... required to assist a handicapped child to benefit from special education." *Id.* at 890, 104 S.Ct. at 3376, quoting 20 U.S.C. § 1401(17). Next, if such services are "supportive," we must ascertain whether they are excluded from the EAHCA's coverage because they represent "medical services;" that is, medical services rendered for other than diagnostic or evaluative purposes. 20 U.S.C. § 1401(17).

A.  Supportive Services

In *Tatro,* the Supreme Court reiterated its belief that " 'Congress sought primarily to make public education available to handicapped children' and 'to make such access meaningful' " in enacting the EAHCA. 468 U.S. at 891, 104 S.Ct. at 3376, quoting *Bd. of Educ. of Hendrick Hudson Central School Dist. v. Rowley,* 458 U.S. 176, 192, 102 S.Ct. 3034, 3043, 73 L.Ed.2d 690 (1982). Thus, "[a] service that enables a handicapped child to remain at school during the day is an important means of providing the child with the meaningful access to education that Congress envisioned." *Id.* The Court therefore found that requiring a school to perform clean intermittent catheterization for a student with kidney dysfunction is "no less related to the effort to educate than are services that enable the

child to reach, enter, or exit the school." *Id.* 468 U.S. at 891, 104 S.Ct. at 3376.

■ Lower courts have both upheld and rejected certain services on the strength of *Tatro.* Two decisions in particular are cited by the plaintiff as authority for denying the defendant transportation. *Detsel by Detsel v. Bd. of Educ. of Auburn,* 637 F.Supp. 1022 (N.D.N.Y.1986); *Bevin H. by Michael H. v. Wright,* 666 F.Supp. 71 (W.D. Pa.1987). Both of these cases involved severely multiply impaired students, each requiring constant nursing care. In *Detsel,* the court made special mention of the required "constant vigilance by an individual trained to monitor [the students] health." 637 F.Supp. at 1023. Likewise, the *Bevin* court noted that "[i]t is the 'private duty' aspect of [the student's] nursing services which distinguishes this case from the others." 666 F.Supp. at 75. Thus, both courts distinguished *Tatro* on its facts, and held that the respective school districts were not required to provide the disputed services.

The difficulty this Court has with both *Detsel* and *Bevin* are their failure to adhere to certain principles developed in *Tatro.* Due to this failure, the decisions are not entirely clear as to whether the disputed services were rejected as not representing "supportive services" under the EAHCA, or whether they fell within the "medical services" exclusion. Rather, *Detsel* concludes that while the disputed services did not actually meet the statutory and regulatory definition of medical services, given that the regulation specifically addresses physician-performed services, denying the services "is in keeping with [the regulation's] spirit." 637 F.Supp. at 1022. The Court, however, believes that this conclusion ignores the spirit of the EAHCA itself. As *Tatro* repeatedly stressed, the reason for mandating the provision of supportive services under the EAHCA is to guarantee handicapped students an opportunity to gain an education. If granting such an opportunity entails furnishing medically-related services short of requiring a licensed physician, we believe such services are the student's right. Moreover,

the EAHCA, its legislative history, and its regulations are void of any suggestion that states are free to decide, on the basis of the cost and effort required, which related services fall within the medical services exclusion. The Court therefore rejects *Detsel*'s conclusion that services provided by a nurse, no matter how comprehensive, are medical services entitled to exclusion under the EAHCA.

*Bevin* reaches its result by holding that related services are only those that are "within reason," and that the proper determination involves a balancing of factors. Yet, *Bevin*'s reliance on *Dept. of Educ., State of Hawaii v. Katherine D.*, 727 F.2d 809 (9th Cir.1984), for this proposition is misplaced. In holding that a school district need only provide services within reason, *Katherine D.* was responding to the question of whether the EACHA must provide a handicapped student "the best possible education." 727 F.2d at 813. This inquiry is entirely separate from the inquiry concerning the services necessary to provide a child "with meaningful *access* to education...." *Tatro*, 468 U.S. at 891, 104 S.Ct. at 3376 (emphasis supplied). Certainly, the issue of the level of education required under the EAHCA will raise questions of balance. Yet, once a district determines the appropriate education, the problem of access must be examined within the framework supplied in *Tatro*. For this reason, we find *Bevin* of marginal precedential value.

Turning to the instant case, we note initially that the plaintiff has already acknowledged the necessity of having a trained individual in the classroom to attend to the defendant's tracheostomy maintenance. Thus, as we have earlier indicated, the sole question is whether, during transport, the plaintiff must also monitor the defendant's needs. Several physicians testified at the local hearing on subjects centering on the risks involved in transporting the plaintiff. All concurred that indeed, complications ranging from mucous plugs to sudden death, are possible with individuals having tracheostomies. Yet the Court questions the ultimate relevance of this testimony. The key issue in this case

is whether transportation, and services surrounding this transportation, are required to provide the plaintiff meaningful access to education. As the state level reviewing officer noted, the defendant is not, per state regulation, eligible for homebound education. Common sense, then, leads to the conclusion that transportation and the incidents thereto are necessary to fulfill the plaintiff's obligation to the defendant under the EAHCA. Thus, we hold that the transportation of the defendant to and from school represents supportive services under the EAHCA.

## B. Medical Services

Notwithstanding our finding that the transportation of the defendant is a supportive service under the EAHCA, the plaintiff may not be obligated to provide this service if it necessitates the provision of "medical services." In *Tatro, supra,* the Supreme Court interpreted this term as "services provided by a licensed physician." 468 U.S. at 892, 104 S.Ct. at 3377. This interpretation is consistent with the Department of Education's regulation describing the nature of medical services covered within the related services provision of the EAHCA. 34 C.F.R. § 300.13(b)(4). As the *Tatro* court noted

> [t]he regulations actually define only those "medical services" that *are* owed to handicapped children: "services provided by a licensed physician to determine a child's medically related handicapping condition which results in the child's need for special education and related services." 34 CFR § 300.13(b)(4) (1983). Presumably this means that "medical services" *not* owed under the statute are those "services by a licensed physician" that serve other purposes.

468 U.S. at 892, n. 10, 104 S.Ct. at 3377, n. 10.

Again, we must take exception with recent decisions modifying this interpretation. Both *Detsel* and *Bevin, supra,* refused acknowledgment of the Supreme Court's directive, instead holding that "extensive, therapeutic health services," while not administered by a physician, "more

closely resemble the medical services excluded by ... the EAHCA" then they resemble supportive services. *Bevin,* 666 F.Supp. at 75, quoting *Detsel,* 637 F.Supp. at 1022. Unquestionably, this interpretation ignores *Tatro*'s conclusion that "[b]y limiting the 'medical services' exclusion to the services of a physician or hospital, ..., the Secretary has given a permissible construction to the provision." 468 U.S. at 893, 104 S.Ct. at 3377. We therefore find that the medical services exclusion is limited to services provided by a licensed physician.

The hearing transcript reveals no testimony indicating that the complications surrounding the transport of the defendant require the attention of a licensed physician. While disagreement exists as to whether a trained layperson could adequately service the defendant's needs, we believe that *Tatro* supports the use of a medical professional, other than a physician, if necessary to the safe transport of the defendant. Thus, the Court concurs with the conclusions of the state-level reviewing officer, and finds that the plaintiff must transport the defendant to and from school.

### III.

Based upon the preceding, the Court GRANTS the defendant's motion for summary judgment, and ORDERS the plaintiff to comply with the recommendations of the state-level reviewing officer.

IT IS SO ORDERED.