No. 96-1987 NICR

Cedar Rapids Community      *
School District,                       *
                                            *
        Appellant,                  *
                                            *
v.                                         *        Appeal from the United States
                                            *        District Court for the Northern
Garret F., A minor by his    *      District of Iowa
Mother and Next friend,      *
Charlene F.,                         *
                                            *
        Appellee.                   *

Submitted:  December 12, 1996

Filed:       February 7, 1997

Before BOWMAN, Circuit Judge, HEANEY, Senior Circuit Judge, and STROM,[*] Senior District Judge.

STROM, District Judge.

This case arises under the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 - 1491o. At issue is whether the IDEA requires the Cedar Rapids Community School District to provide Garret F. with continuous nursing services while he is in school. The district court[1] granted summary judgment in favor of Garret

---

[*]The Honorable Lyle E. Strom, United States Senior District Judge for the District of Nebraska, sitting by designation.

[1]Hon. Edward J. McManus, United States District Court Judge for the Northern District of Iowa, Cedar Rapids Division.

finding that the necessary services were not within the "medical services" exclusion of the IDEA, and therefore, were "related services" which the school district must provide.

## FACTS

In 1987, when he was four years old, Garret was severely injured in a tragic motorcycle accident. While Garret's mental abilities were unaffected, his spinal cord injury left him a quadriplegic and ventilator dependant.

In the fall of 1988, Garret started kindergarten in the Cedar Rapids Community School District. He has been in school there ever since. During the school day, Garret requires a personal attendant within hearing distance of him at all times to see to his health care needs. Garret requires urinary bladder catheterization about once a day, suctioning of his tracheostomy as needed, food and drink on a regular schedule, repositioning, ambu bag administration if the ventilator malfunctions, ventilator setting checks, observation for respiratory distress or autonomic hyperreflexia, blood pressure monitoring, and bowel disimpactation in cases of autonomic hyperreflexia. From kindergarten through the fourth grade, pursuant to an agreement between Garret's parents and the school district, Garret's family provided the personal attendant.[2]

However, in 1993, when Garret started fifth grade, the agreement between his parents and the school district was discontinued. Garret's mother, Charlene F., requested that the school district provide Garret's nursing services while he was at

---

[2]In kindergarten, Garret's aunt, who was not a registered nurse (RN) or a licensed practical nurse (LPN) and did not have formal training in medical services, performed these services. From first through fourth grades, an LPN performed the services.

Garret's family sees to his health care needs when Garret is at home after school and on weekends. On weeknights, an LPN is present to check on Garret every two hours as he sleeps.

-2-

school. The school district refused stating that it was not obligated to provide continuous, one-on-one nursing services.

Relying on the IDEA and the Iowa special education laws, Charlene administratively challenged the school district's position. After a hearing, the administrative law judge concluded that the school district had to reimburse Charlene for the nursing costs she incurred during the 1993-94 school year and had to provide such services in the future. The school district appealed to United States District Court.

In district court, both parties filed motions for summary judgment based on the record from the administrative hearing. The court granted summary judgment in favor of Garret finding that the services were not within the scope of the "medical services" exclusion of the IDEA, and therefore, the school district was required to provide them as "related services." The school district appealed.

## STANDARD OF REVIEW

The court will review the district court's interpretation of the applicable federal statutes de novo on appeal. Dell v. Board of Educ., 32 F.3d 1053, 1058 (7th Cir. 1994).

## DISCUSSION

In order to receive funds under the IDEA, a state must demonstrate to the Secretary of Education that it has "in effect a policy that assures all children with disabilities the right to a free appropriate public education." 20 U.S.C. § 1412(1) (Supp. 1996). The phrase "free appropriate public education" is defined as special education and related services. 20 U.S.C. § 1401(18)

(1990).[3]  Thus, if Garret's nursing services qualify as "related services," the school district must provide them.

> Related services are statutorily defined as:
>> transportation, and such developmental, corrective, and **other supportive services (including** speech pathology and audiology, psychological services, physical and occupational therapy, recreation, including therapeutic recreation, social work services, counseling services, including rehabilitation counseling, and **medical services, except that such medical services shall be for diagnostic and evaluation purposes only)** as may be required to assist a child with a disability to benefit from special education, and includes the early identification and assessment of disabling conditions in children.

20 U.S.C. § 1401(a)(17) (Supp. 1996) (emphasis added).  Garret contends that his nursing services qualify as related services, but the school district argues that the services are "medical services" which are expressly excluded from the definition of supportive services and consequently the definition of related services.

This court's decision is controlled by the two step test pronounced by the Supreme Court in Irving Indep. School Dist. v. Tatro, 468 U.S. 883 (1984).  To determine if a service is a related

_____

[3]The full definition is:

special education and related services that-

(A)  have been provided at public expense, under public supervision and direction, and without charge,
(B)  meet the standards of the State educational agency,
(C)  include an appropriate preschool, elementary, or secondary school education in the State involved, and
(D)  are provided in conformity with the individualized education program required under section 1414(a)(5) of this title.

20 U.S.C. § 1401(a)(18) (1990).

-4-

service under the IDEA, the court must first determine whether the service is a "supportive service[] . . . required to assist a child with a disability to benefit from special education."  20 U.S.C. § 1401(17) (1990); Tatro, 468 U.S. at 890.  If it is, then the court must determine if the service is excluded from the definition of supportive service as a medical service beyond diagnosis or evaluation.  Tatro, 468 U.S. at 890.

There is little argument about whether the services Garret requires qualify as supportive services necessary to enable him to enjoy the benefit of special education.  If the services are not available during the school day, Garret cannot attend school and thereby benefit from special education.  "Services . . . that permit a child to remain at school during the day are no less related to the effort to educate than are services that enable the child to reach, enter, or exit the building" which are expressly provided for in the IDEA.  Id. at 891.  Thus, the court finds that the services Garret requires at school are supportive services.

At the second step, the court must determine whether the services are excluded from the definition of supportive services as medical services beyond diagnosis and evaluation.  In Tatro, the Supreme Court established a bright-line test:  the services of a physician (other than for diagnostic and evaluation purposes) are subject to the medical services exclusion, but services that can be provided in the school setting by a nurse or qualified layperson are not.  See Tatro, 468 U.S. at 891-95.  Regardless of whether we agree with this reading of the statute and the regulations, we are bound by the Supreme Court's holding.

Here, Garret's services are not provided by a physician, but rather, a nurse.  Thus, based on Tatro, the services are not medical services, but rather, school health services or supportive services, both of which meet the definition of related services

which the district must provide.  See 34 C.F.R. § 300.16(a), (b)(11) (1996).

The court is aware of several decisions that have not interpreted Tatro as establishing a bright-line, physician/non-physician test for medical services.  See Detzel v. Board of Educ. of Auburn, 637 F. Supp. 1022 (N.D.N.Y. 1986), aff'd, 820 F.2d 587 (2d Cir. 1987), cert. denied, 484 U.S. 981 (1987); Granite School Dist. v. Shannon M., 787 F. Supp. 1020 (D. Utah 1992); Neely v. Rutherford County School, 68 F.3d 965 (6th Cir. 1995). Going beyond the physician/non-physician distinction the Supreme Court found in the statute and the regulations, these courts rely on dicta in Tatro in order to factor into the medical services exclusion considerations of the nature and extent of the services performed.  The court declines to seize dicta in Tatro to go beyond the physician/non-physician test which the Supreme Court sets forth therein.

Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.